IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>OMARI PATTON,<br><br>*Defendant.* | Criminal No. 2:22-cr-121 – 1<br>Civil No. 2:25-cv-00582<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Defendant Omari Patton ("Patton") was found guilty by a jury on February 8, 2023, of Counts 1 and 2 of an indictment charging him with Attempt to Provide Contraband to an Inmate in violation of 18 U.S.C. §§ 1791(a)(1) and 1791(b)(2), as well as Counts 6, 7, and 8 of the indictment charging him with Attempt to Obtain Contraband in Prison in violation of 18 U.S.C. §§ 1791(a)(2) and 1791(b)(2). (ECF Nos. 1 and 127). On June 15, 2023, the Court sentenced him to 63 months of imprisonment at each count of Counts 1, 2, 6, 7, and 8 to be served concurrently, to be followed by a 3-year term of supervised release at each count of Counts 1, 2, 6, 7 and 8 to be served concurrently. This 3-year term of supervised release is to be served concurrently with any other court-ordered term of supervision. (ECF No. 180).

Patton's notice of appeal to the United States Court of Appeals for the Third Circuit was filed at No. 23-2101 on June 15, 2023. (ECF No. 182). He challenged the calculation of the drug quantity attributable to him, the application of the aggravating-role enhancement, the application of the use-of-affection enhancement, and the reasonableness of his sentence. (ECF

1

No. 227-2, p. 3). On December 5, 2024, the Third Circuit affirmed the judgment of sentence. (ECF No. 227). Patton's certiorari petition to the United States Supreme Court at No. 24-6678 was denied on April 21, 2025. *See www.supremecourt.gov/*. Meanwhile, on September 23, 2024, the Court denied Patton's request for a sentence reduction. (ECF No. 221).

Patton is currently serving his sentence at FCI Danbury with an anticipated release date of July 5, 2026. *See www.bop.gove/inmateloc/*. On April 30, 2025, he filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion") claiming that his trial and appellate counsel were constitutionally ineffective for failing to file certain motions and raise various arguments and objections.[1] (ECF No. 229).[2] He also filed a July 15, 2025, letter motion seeking the transfer of his case to the District of New Jersey. (ECF No. 232). For the following reasons, Patton's motions will be denied.

## I.    THE § 2255 MOTION

Patton brings four ineffective assistance of counsel claims in his § 2255 Motion. First, he alleges that counsel was ineffective "for failing to file a motion for improper venue on the contraband charge" because the contraband at issue was seized at FCI Fort Dix in New Jersey. (ECF No. 229 at p. 4). In his second claim, Patton argues that his trial and appellate counsel were ineffective for "failing to object to the courtroom closure during the jury selection process." (*Id.* at 5). In his third claim, Patton alleges that appellate counsel was ineffective for failing to

---

[1] On May 7, 2025, and on June 5, 2025, the Court issued *Miller* notices informing Patton of his options. (ECF No. 231 and 233). Patton responded stating that he wished to have his § 2255 Motion ruled upon as filed. (ECF No. 234). Although his motion was filed with the Court on April 30, 2025, Patton attests that he placed his § 2255 Motion in the prison mailing system on April 18, 2025. (Doc. No. 229 at p. 13). The Government does not contest that Patton's § 2255 Motion is timely under 28 U.S.C. § 2255(f)(1). Therefore, the Court finds that it is timely.

[2] The motion was also filed in 2:25-cv-00582 at ECF No. 1. The Court will cite to the pleadings as they appear on the docket in Patton's criminal case.

2

challenge his sentence based on the "acquitted conduct" amendment effective November 1, 2024. (*Id.* at 7). In his fourth claim, Patton argues that his counsel was ineffective for not objecting to a "Rule 12(d) violation" based on the Court's alleged failure to rule on his *pro se* filing at ECF No. 73. (*Id.* at 8). The record, supplemented by the Court's personal knowledge of this case by having presided over it since the filing of the indictment, conclusively negates the factual predicates asserted by Patton in support of his motion and establishes that he is not entitled to relief. Because of this, the Court holds that an evidentiary hearing is unwarranted. Patton's motion will be denied, and a certificate of appealability will not issue.

### A. Standard of Review

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). As a remedy, the court must "vacate and set the judgment aside and ... discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Gordon*, 979 F. Supp. 337, 339 (E.D. Pa. 1997) (citation omitted).

In reviewing a motion to vacate under § 2255, "[t]he court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (cleaned up). Where, as here, the

petitioner files his motion *pro se*, the Court construes the pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation[.]" *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to § 2255, unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief. *See* 28 U.S.C. § 2255(b); *Booth*, 432 F.3d at 545-46; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). Thus, if the record conclusively negates the factual predicates asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law, even if the factual predicates as alleged in the motion are true, an evidentiary hearing is not required. *See Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985).

The Court finds no need for an evidentiary hearing because, as will be explained below, the record conclusively establishes that Patton is not entitled to relief.

**B. Analysis**

Under the Sixth Amendment to the United States Constitution, a defendant has the right to effective assistance of counsel. A defendant relying on an allegation of ineffective assistance of counsel to support their request for relief under § 2255 bears the burden of establishing that counsel's performance was deficient. *Burt v. Titlow*, 571 U.S. 12, 23 (2013). "[T]he absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). To prove ineffective assistance of counsel, a defendant must establish both deficiency and prejudice:

> [first,] that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel"

4

> guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*United States v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 687). The Third Circuit has explained:

> As the Supreme Court has stated, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). On review, we "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). "In essence, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness' meaning 'reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). Regarding the interplay between *Strickland* and § 2255, if [a defendant] shows both elements of *Strickland*, he satisfies the requirements of § 2255. *See United States v. Rad–O–Lite of Phila., Inc.*, 612 F.2d 740, 744 (3d Cir. 1979) ("[P]ersons ... can attack a conviction for fundamental defects, such as ineffective assistance of counsel.").

*Id.* at 290.

### 1. *Ground One*

Patton argues that the contraband at issue, K2 paper saturated with Schedule I synthetic cannabinoid controlled substances, was seized at FCI Fort Dix in New Jersey, and he instructed his attorney to file a motion for improper venue. Patton believed the case should have been brought in the District of New Jersey instead of the Western District of Pennsylvania. According to Patton, his counsel did not do so and he was "forced" to object on his own and the Court declined to rule on his *pro se* motion since he was represented by counsel. (*See* ECF Nos. 107 and 109). This ineffective assistance of counsel argument is unavailing because Patton's underlying lack of venue argument is meritless.

5

Federal Rule of Criminal Procedure 18 provides that a criminal prosecution must be prosecuted "in a district where the offense was committed." FED. R. CRIM. P. 18. When an offense continues across multiple districts, it may be prosecuted "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). As explained by the Third Circuit, "the Constitution does not command a single exclusive venue." *United States v. Pendleton*, 658 F.3d 299, 303 (3d Cir. 2011) (citation omitted). Rather, "[t]he Constitution requires only that the venue chosen be determined from the nature of the crime charged as well as from the location of the act or acts constituting it, and that it not be contrary to an explicit policy underlying venue law." *Id.* (citation omitted). As a general rule, in the Third Circuit, venue is proper in a district where a few of the acts of the charges occurred, or where a co-conspirator has committed an act in furtherance of the conspiracy. *See United States v. Root*, 585 F.3d 145, 156 (3d Cir. 2009); *United States v. Perez*, 280 F.3d 318, 328–29 (3d Cir. 2002).

The evidence adduced at trial proved that it was Patton's idea to distribute K2 paper at FCI Fort Dix and FCI Ray Brook. He arranged aspects of the out-of-prison portion of the operation and began creating a distribution network for the K2 paper within the Federal Bureau of Prisons ("BOP"). Patton directed his son, Dashawn Burley ("Burley"), who resided in Allegheny County in the Western District of Pennsylvania, to mail envelopes containing K2 saturated paper to him at FCI Fort Dix in New Jersey and Shamar Banks ("Banks") at FCI Ray Brook in New York. Patton also made multiple telephone calls to Burley in Allegheny County instructing him on how to acquire the K2 paper, who to mail it to, and how to mail it. Patton also made telephone calls to his K2 supplier, Noah Landfried ("Landfried"), who was on federal supervised release in the Western District of Pennsylvania after his release from federal prison in 2017, to secure the K2 supply for Burley. Patton also made telephone calls to Landfried's

6

assistant James Perry ("Perry"), who was also in the Western District of Pennsylvania. Ultimately, in late September and early October 2018, Burley, at Patton's direction, mailed three envelopes to Patton at FCI Fort Dix and two envelopes to Banks at FCI Ray Brook from the Western District of Pennsylvania. Burley, at Patton's direction, disguised envelopes to appear as if they were legal mail sent by a fake attorney named "James Davis." Each of the envelopes contained pages of K2 paper saturated with Schedule I synthetic cannabinoid controlled substances, including 5FMDMB-PINACA. The K2 paper was produced by Landfried in the Western District of Pennsylvania. (ECF Nos. 126, 196, and 197).

Not only did Patton repeatedly contact individuals located in the Western District of Pennsylvania, but he directed those individuals to take actions in furtherance of his offenses while they were located in the Western District of Pennsylvania. The evidence at trial clearly established venue was proper in the Western District of Pennsylvania.

"Effective assistance does not demand that every possible motion be filed, but only those having a solid foundation." *United States v. Hines*, 470 F.2d 225, 232 (3d Cir. 1972). Patton failed to demonstrate that counsel's performance fell below an objective standard of reasonableness. This is to say that Patton's trial counsel was not ineffective for failing to raise a meritless venue or transfer claim,[3] and appellate counsel was not ineffective for failing to pursue a venue claim on appeal. No deficiency exists with counsel's representation, and Patton's ineffective assistance of counsel claim fails.

Furthermore, assuming *arguendo* counsel's representation was deficient, Patton failed to demonstrate that he was prejudiced. The Government accurately notes that Patton has "offer[ed]

---

[3] While Federal Rule of Criminal Procedure Rule 21(a) provides for the transfer of a case to another district, Patton's crime largely involved conduct occurring in the Western District of Pennsylvania, and there was no sound basis for a discretionary transfer to another district.

no explanation, let alone any proof, of prejudice resulting from his case being charged and tried in this District." (ECF No. 241, pp. 10-11). Patton failed to come forth with concrete allegations of actual prejudice. The Court would note that no evidence exists that the media or community reacted to the charged crimes, or Patton, or that an atmosphere existed that was so hostile and pervasive so as to preclude a rational trial process. No evidence exists that there was extensive news coverage prior to trial that contained blatantly prejudicial information. There was no media interference in the courtroom during the trial.

Patton received a fair and impartial trial. The evidence of his guilt was overwhelming. The evidence at trial was clear that Patton, while serving a lengthy prison sentence in FCI Fort Dix, created a network for K2 paper to be smuggled into BOP facilities, recruited accomplices (including his own teenage son), and coordinated the drug deals. Notably, at trial, Patton took the stand in his own defense and spun a tale for the jury that put his proclivity for dishonesty on full display. The jury rejected his fantastical story - i.e., that the guards and mailroom staff at FCI Fort Dix gave him permission to obtain K2 paper, that the BOP allowed K2 paper into its facilities, that he and Banks were addicts, and that all the cellular telephones he had in prison were rented to him by corrupt guards.

2. *Ground Two*

In his second claim, Patton argues that his trial and appellate counsel were ineffective for "failing to object to the courtroom closure during the jury selection process." (ECF No. 229, p. 5). According to Patton, during jury selection "the courtroom was closed to the public which prevented my family (namely, my brother) from entering the courtroom while voir dire was underway;" that he "made a contemporaneous objection to the court"; and that the purported

courtroom closure violated his Sixth Amendment right. (*Id.*). This ineffective assistance of counsel argument is unavailing.

The Third Circuit has already advised Patton of the law surrounding such a claim when he appealed the denial of his § 2255 motion at Criminal No. 02-cr-00093. In that case, Patton argued that his conviction should be vacated because during jury selection the Honorable Donetta Ambrose closed the courtroom to the public. The Third Circuit explained:

> The Sixth Amendment guarantees the "accused ... the right to a ... public trial," U.S. Const. amend. VI, and extends that guarantee to the voir dire of potential jurors. *Presley v. Georgia*, 558 U.S. 209, 130 S.Ct. 721, 724, 175 L.Ed.2d 675 (2010). This right, however, is not absolute. An unjustified courtroom closure only infringes a defendant's Sixth Amendment rights if it undermines the values the Supreme Court identified in *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) as fundamental to the public trial guarantee. *United States v. Gupta*, 650 F.3d 863, 867 (2d Cir. 2011), *reh'g en banc granted* Sept. 15, 2011 (quoting *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996)). If the closure did not jeopardize or subvert these values, which (1) ensure a fair trial, (2) remind the government and judge of their responsibility to the accused and importance of their functions, (3) encourage witnesses to come forward, and (4) discourage perjury, it did not offend the Sixth Amendment because the closure is considered trivial. *Id.* at 867; *United States v. Perry*, 479 F.3d 885, 890 (D.C. Cir. 2007) ("A courtroom closing is trivial if it does not implicate the values served by the Sixth Amendment as set forth in Waller.") (internal quotation marks and citations omitted); *see United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003); *Braun v. Powell*, 227 F.3d 908, 918–20 (7th Cir. 2000).
>
> In determining whether a closure was trivial, we examine the actions of the court and their effect on the conduct of the trial. *Gupta*, 650 F.3d at 867 (citations omitted). Although triviality is not determined by a single factor, *Morales v. United States*, 635 F.3d 39, 43 n. 7 (2d Cir. 2011), a closure was trivial and did not implicate the values advanced by the public trial guarantee when the trial judge was unaware of the closure and it was limited in both scope and duration. *See United States v. Al–Smadi*, 15 F.3d 153, 154 (10th Cir. 1994) (concluding that before a defendant can claim a violation of his Sixth Amendment rights, "some affirmative act by the trial court meant to exclude persons from the courtroom" must occur); *Snyder v. Coiner*, 510 F.2d 224, 230 (4th Cir. 1975).

*United States v. Patton*, 502 F. App'x 139, 141-42 (3d Cir. 2012). The Third Circuit affirmed Judge Ambrose's denial of relief holding that the alleged courtroom closure was trivial given that the alleged attempts by Patton's family members to enter the courtroom were unclear as to time

9

and number, and his allegations were amorphous and vague. It also found that no constitutional violation occurred even if Patton's family members were turned away because the courtroom was filled to capacity. *Id.*

The Court holds that Patton's claim here is similarly vague and conclusory. He offers no dates, times, or durations for when the courtroom was supposedly closed to the public or his family members, nor any factual details regarding how his brother was supposedly barred from the courtroom. He filed no supporting affidavits. The Court recalls this trial well, and the courtroom was not closed to the public. The only time courtroom access was limited was during individual *voir dire* of prospective jurors.

No party objected to how the Court conducted *voir dire*. Consistent with its standard jury selection practice, the Court asked questions to the entire panel in open court in the courtroom. (ECF No. 228, pp. 4–5); *see also* LCrR 24.2. The panel was then moved to a neighboring courtroom. (ECF No. 228, pp. 5-6). The Court brought prospective jurors one-by-one to the courtroom to question them individually in the presence of counsel, the court reporter, the marshals, and other court staff. The entirety of the jury selection process was transcribed and recorded. (ECF No. 228).

During jury section, Patton engaged in the following exchange with the Court:

> THE DEFENDANT: Excuse me. Your Honor, I was told my family was here and had to leave.
> THE COURT: Only for this part of voir dire. As I explained to your -- is it your nephew? THE DEFENDANT: My brother.
> THE COURT: Your brother. This part of voir dire, if we were in a smaller proceeding, would not be in the public courtroom but would be in my conference room. So this, as we individually discuss the questions with the individual jurors, is not open to the public. The rest of the trial after this stage is completely open to the public.
> THE DEFENDANT: I just want to make sure because I understood the voir dire - - I mean, the jury selection is –

10

>THE COURT: The individual questions, we do in camera, meaning not open to the public.

(*Id.* at 133). Patton does not allege that his brother or anyone else was unable to enter the courtroom at any other time.

Ordinarily, the Court holds individual *voir dire* in its conference room, which does not violate a defendant's Sixth Amendment right to a public trial. *See Patton*, 502 F. App'x at 142 ("[W]e previously concluded that the Sixth Amendment's public trial guarantee was not violated when individual voir dire occurred in a closed jury room adjacent to the courtroom.") (citing cases); *United States v. Bansal*, 663 F.3d 634, 661 (3d Cir. 2011) (finding no Sixth Amendment violation resulting from questioning of individual jurors in closed jury room); *see also Gibbons v. Savage*, 555 F.3d 112, 121 (2d Cir. 2009) (noting in passing that no constitutional violation occurred when individual *voir dire* was conducted in a room adjacent to the courtroom). How the Court conducted the individual *voir dire* portion of jury selection did not violate Patton's Sixth Amendment right to a public trial. The Court never issued an order specifically closing individual *voir dire* to the public. What transpired was a trivial closing of the courtroom limited in both scope and duration. The entirety of jury selection occurred on February 6, 2023, from 9:15 a.m. to 4:00 p.m. (ECF Nos. 114 and 228). No one presented an oral or written motion requesting access to the individual *voir dire* portion of jury selection.

At most, the Court prevented the members of the entire *voir dire* panel (and possibly Patton's brother) from hearing other members' responses. The Court is "aware of no case holding" that the method of questioning prospective jurors here "offend[s] the Sixth Amendment." *United States v. Reese*, 2025 WL 314103, *1 (3d Cir. Jan. 28, 2025) (citing *Bansal*, 663 F.3d at 661). The entirety of the jury selection process was transcribed and recorded, which weighs against any suggestion that Patton was deprived of a public trial. (ECF

11

No. 228). Patton has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness; his counsel was not ineffective for failing to raise a meritless claim about how the individual *voir dire* portion of jury selection was conducted.

Furthermore, Patton has not established how counsel's alleged inaction prejudiced him. He does not explain how the presence of the public would have changed the outcome of the proceedings. Any potential for prejudice is confined to the number of hours it took to conduct individual *voir dire*. There is no indication that any juror falsified information or would have otherwise been exposed as unqualified to serve if the individual *voir dire* proceedings had been public. Nor is there evidence that the Court, attorneys, or other court personnel engaged in misconduct during the individual *voir dire* portion of jury selection which would have been minimized or thwarted by unrestricted public access during this limited portion of jury selection. No prospective jurors were excused except with the consent of both parties. No preemptory challenges were made during individual *voir dire*. Any suggestion that a more public spotlight on the individual *voir dire* portion of jury selection would have resulted in a different jury is pure speculation. There is nothing to suggest that a different jury would have resolved this case differently.

### 3. Ground Three

In this third claim, Patton alleges that his appellate counsel was ineffective for failing to challenge his sentence based on the "acquitted conduct" amendment effective November 1, 2024. (ECF No. 229, p. 7). Patton presumably refers to U.S.S.G. § 1B1.3(c), which provides:

> ACQUITTED CONDUCT.—Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction.

12

U.S.S.G. § 1B1.3(c). It excludes "conduct for which the defendant was criminally charged and acquitted in federal court" from the scope of relevant conduct used in calculating a sentencing range under the guidelines. U.S.S.G. § 1B1.3(c). Section 1B1.3(c) became effective on November 1, 2024. None of its provisions were made retroactive. *See* U.S. Sent'g Guidelines Manual app. C, amend. 826 (U.S. Sent'g Comm'n 2024); *see also* § 1B1.10(a)(1), (d).

Patton was sentenced on June 15, 2023. Pursuant to § 1B1.11, the Court had to use the Guidelines Manual in effect on the date Patton was sentenced. Thus, the 2021 version of the Guidelines Manual was properly applied, which did not include the acquitted conduct amendment now set forth in § 1B1.3(c). (ECF No. 158, p. 9). As previously noted, the revision in § 1B1.3(c) became effective in November 2024, and it is not retroactive.[4] Consequently, Patton failed to demonstrate that counsel's performance fell below an objective standard of reasonableness. Counsel was not ineffective for failing to raise a meritless argument.

Patton's ineffectiveness claim is just another way to resurrect his argument that he was punished for conduct for which he was acquitted at Criminal No. 2:19-cr-00008. Prior to sentencing, Patton objected to paragraph 15 of the presentence investigation report, which established a base offense level of 16 based on § 2P1.2, which is the guideline that applies to 18 U.S.C. § 1791(a) offenses. (ECF Nos. 158 and 162). Section 2P1.2(c)(1) provides that if the object of the offense was the distribution of a controlled substance, apply the offense level from U.S.S.G. § 2D1.1, which calls for a base offense level that coincides with the type and quantity

---

[4] The amendment to § 1B1.3 altered the actual guideline language and added a new substantive subsection that did not exist at the time of Patton's sentencing. It carved out a new exception to how courts should evaluate acquitted conduct and altered the legal effect of then-existing guidelines. The guidelines allow for retroactive application only for amendments specifically listed in § 1B1.10(d). The amendment at issue here is not listed in subsection (d) and thus does not have retroactive effect. *See e.g., United States v. Botsvynyuk*, No. 24-3253, 2025 WL 943404, at *2 (3d Cir. Mar. 28, 2025).

of controlled substance attributable to the defendant. U.S.S.G. § 2P1.2(c)(1). 26.6 kilograms of converted drug weight was attributable to Patton, resulting in a base offense level of 16.[5] (ECF No. 158, p. 9). Patton argued that applying the cross-reference would cause the Court to impose a sentence based on a crime that he was acquitted of at Criminal No. 2:19-cr-00008. This in inaccurate as the crime Patton was acquitted of at Criminal No. 2:19-cr-00008, and the crimes for which the jury convicted him of in this case, were different crimes. Thus, even if § 1B1.3(c) could have been applied to Patton's guideline calculations at sentencing, the Court would not have applied it and altered Patton's base offense level.

Lastly, Patton failed to set forth how counsel's alleged inaction prejudiced him. A petitioner asserting ineffective assistance of counsel at sentencing must show that but for defense counsel's "alleged ineffectiveness, he would have likely received a lower sentence." *United States v. Booth*, 432 F.3d 542, 546-47 (3d Cir. 2005); *See also United States v. Dobbin*, _ F.4th _, 2025 WL 2302431, at *3 (3d Cir. 2025). Any suggestion that the Court would have imposed a different sentence is pure speculation. At sentencing, the Court rejected Patton's request for a downward variance. (ECF No. 199, p. 61). In addition to recognizing the advisory nature of the guidelines, the Court stated at one point: "I further hold that I would have adhered to this sentence even if I did not accurately compute the guideline range." (*Id.* at 72). Thereafter,

---

[5] Level 16 applies when the converted drug weight ("CDW") is between 20 and 40 kilograms. The drug quantity table in § 2D1.1(c) does not specifically list synthetic cannabinoid controlled substances which is why a CDW level is used. Section 2D1.1 Application Note 8(D) directs that 1 gram of a Schedule I or II synthetic cannabinoid is equivalent to 167 grams of CDW. The 26.6 kilogram CDW quantity in the presentence investigation report was based on the 19 pages of K2 paper that were in the five envelopes that were seized at FCI Fort Dix and FCI Raybrook between September 19, 2018, and October 2, 2018, as established at trial. The CDW did not account for any of the K2 paper that Patton obtained or provided before or after the seizure of the five envelopes. The lab reports admitted at trial established that the 19 pages of K2 paper weighed a total of at least 159.32 grams. When that weight was multiplied by the applicable 167 conversion factor, it resulted in 26.6 kilograms of CDW.

almost one year ago, the Court denied Patton's motion for a sentence reduction pursuant to 18 U.S.C. § 3582. (ECF No. 221). It found that Patton had not shown an extraordinary and compelling reason for granting him compassionate release, and that the § 3553(a) factors weighed against his release. In rendering its ruling, the Court specifically noted:

> Patton remains a danger to the community. Serving nearly twenty years in jail has not taught Patton anything. He has done nothing to rehabilitate himself and he has proven that nothing will stop him from being a drug trafficker. His sentence reflects the serious nature of his crimes and his disrespect for the law. It serves to deter individuals who contemplate committing crimes while imprisoned. The sentence also protects the public from Patton's actions. Patton has not demonstrated to the Court that granting him release now (which would constitute a significant reduction in his sentence) would promote respect for the law and adequate deterrence. Granting Patton compassionate release would not reflect the seriousness of his crimes (which included recruiting his own son into his scheme), promote respect for the law, provide just punishment, afford adequate deterrence from future crimes by him, nor would it prevent sentencing disparities.

(*Id*. at 6). Patton simply cannot show a reasonable probability that he would have received a lower sentence.

### 4. Ground Four

Patton argues that his counsel was ineffective for failing to object to a "Rule 12(d) violation" based on the Court's decision not to rule on his *pro se* filing docketed at ECF No. 73. According to Patton, his filing was a "pretrial motion." (ECF No. 229, p. 8).

ECF No. 73 is a letter from Patton docketed on November 14, 2022, addressed to "Mark Hornak, Chief, U.S. District Court Judge." Within it, Patton asserts that the prosecuting Assistant United States Attorney and a DEA Special Agent committed "fraud" and "perjury" in connection with an affidavit for an application for an extension of a wiretap order for the activities in and around a vehicle. (ECF No. 73). Patton seemingly wanted Chief Judge Hornak to issue an administrative order dismissing the charges against him. Entered on the docket that same day at ECF No. 74 was the Court's "Remark as to OMARI PATTON. 73 Correspondence

sent to Chief Judge Mark Hornak and posted by his chambers has been received by Judge William Stickman. The Court will take no action. (eca) Modified on 11/14/2022 (eca). (Entered: 11/14/2022)." (ECF No. 74).

The Constitution does not confer a right to proceed simultaneously *pro se* and represented by counsel, and the Court was not obligated to consider any *pro se* motions filed by Patton because he was represented by counsel. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (no constitutional right to hybrid representation). A few months before Patton sent his letter to Chief Judge Hornak, the Court advised him:

> AND NOW, this 24th day of August 2022, IT IS HEREBY ORDERED that Defendant's *pro se* motion to dismiss (ECF No. 45) is DENIED WITHOUT PREJUDICE subject to reassertion by counsel, and the motion is referred to Defendant's counsel for such action as he deems appropriate at this time. *See United States v. Vampire Nation*, 451 F.3d 189, 206 n.17 (3d Cir. 2006); *see also United States v. DAmario*, 328 F. App'x 763, 764 (3d Cir. 2009). Defendant is advised that he has been appointed competent counsel by the Court and it is not obligated to consider Defendant's *pro se* motions. Any future motions in this matter should be filed through counsel. Defendant should contact his counsel for any case information needed.

(ECF No. 46). Then, when Patton filed another *pro se* motion on August 29, 2022, for compassionate release, the Court entered the following Order: ORDER as to OMARI PATTON. Defendant's pro se 47 Motion for Compassionate Release is referred to Attorney Paul Jubas to further supplement or file a notice of withdrawal on or before 09/21/22." (ECF No. 48).

To the extent Patton is claiming that counsel should have adopted ECF No. 73 as a basis for a pretrial motion, his claim as to counsel's ineffectiveness is vague and conclusory. Without any explanation, it is impossible to discern on what basis Patton believes his counsel should have moved to dismiss the indictment. The letter he submitted to Chief Judge Hornak lacks sufficient information. He failed to articulate exactly what "fraud" and "perjury" occurred in relation to a wiretap of a vehicle, and how it warranted the dismissal of the indictment in this case. As it was,

Patton's counsel filed a motion to dismiss the indictment that alleged a violation of Patton's double jeopardy rights. (ECF No. 37). The Court denied Patton's motion. (ECF No. 77).

The Government has offered the following insight into what it believes Patton is alleging his counsel should have argued and why such an ineffectiveness claim is frivolous:

> In his prior case at Criminal No. 19-8, Patton asserted in pro se filings a challenge to wiretap applications, which he presumably complains of again in his § 2255 Motion. *See* Cr. No. 19-8, Doc. No. 3010. That issue created a conflict between him and his attorneys, prompting a motion by his counsel to withdraw based largely on his insistence on making unsubstantiated arguments challenging the wiretap applications. *See* Cr. No. 19-8, Doc. Nos. 3000, 3010. In October 2021, the Honorable Nicholas Ranjan entered an order denying Patton's pro se challenge to those applications. Cr. No. 19-8, Doc. No. 3010. Judge Ranjan found that there was nothing facially false or misleading about the affidavits, that it was not impossible for an incarcerated defendant to remain involved in the drug trafficking activities of an organization or to be intercepted over wiretaps, and that Patton's challenge to the wiretap applications was untimely. *Id.* Any attempt by Patton to relitigate this claim in the instant case would have failed for the same reasons.

(ECF No. 241, pp. 18-19). The Court concurs with the Government's analysis, and it would note its agreement with Judge Ranjan's holding in Criminal No. 2:19-cr-00008 when faced with Patton's wiretap argument:

> And in this case, communications between Mr. Patton and Mr. Perry were, in fact, intercepted via the wiretap. ECF 3001, p. 2. That's because Mr. Patton made at least one phone call to Mr. Perry while Mr. Perry was inside the pickup truck. *Id.* That "use" is what was described in the wiretap application. The evidentiary import of any intercepted communications will be for the jury to determine, and Mr. Patton may make any arguments related to those communications at trial.[1]
>
> > [1] Mr. Patton also complains that the fact of his incarceration was misleadingly omitted from the affidavits. But that is simply not true. Both affidavits clearly stated that Mr. Patton was serving a federal prison sentence at the time of the application. ECF 3001, pp. 1-2.
> > Second, even if Mr. Patton's premise were correct, it still would not render the warrant applications deficient. This is a drug conspiracy case. Mr. Patton is alleged to have worked in concert with one or more of many other "Target Subjects" listed in the warrant applications. Considering this allegedly jointly undertaken criminal activity, which is detailed throughout the applications, Mr. Patton did not have to physically be inside the truck for probable cause to exist for the wiretaps. As the government here correctly argues, just because a person is

> listed "as a target subject in an affidavit doesn't mean [that he or she is] a user of the facility or the location that's being intercepted." Transcript of the June 28, 2021 Status Conference. Rather, the government is "just listing somebody who might be intercepted over that telephone as having been called by the person who does use the phone or in this instance, having been mentioned by somebody who is in the truck." *Id.*

(ECF No. 3010, p. 2). Judge Ranjan also found Patton's "allegations of 'perjury' against the Assistant United States Attorney and Special Agent [ ] unsupported." (*Id.* at 3).

This is all to say that there is insufficient information before the Court to even begin to evaluate the merits of Patton's alleged ineffectiveness claim. But if it is indeed the same claim that Patton raised before Judge Ranjan, it is meritless and no ineffectiveness flows from counsel's failure to re-litigate it in this case through a motion to dismiss the indictment.

Additionally, Patton failed to set forth how counsel's alleged inaction prejudiced him. Only a few telephone calls were intercepted in this case.[6] At trial, the calls involving Patton's enterprise that were admitted into evidence came from two sources. (ECF No. 126). First, the jury learned that investigators conducted a Title III wiretap investigation in 2018 into Landfried, who was a supplier of K2 paper. The investigation intercepted a telephone used by Landfried's helper, Perry. Patton was intercepted communicating with Perry. (ECF No. 196, pp. 33-34, 120-30). Second, the jury learned that Patton and Banks sometimes placed calls from prison phones at their respective facilities.[7] The few calls played at Patton's trial were apparently a tiny subset of those captured on the wiretap of Perry's cellular telephone, and the few Patton/Banks prison calls that the BOP retained. The telephone calls were just some of the Government's evidence

---

[6] The cellular telephones Patton used in prison were contraband, and, therefore, the BOP had no way of monitoring them.

[7] The BOP records calls placed from its telephones, but the recordings are not retained indefinitely. Due to the sheer number of calls, only five percent of them are monitored. (ECF No. 196, pp. 87-89).

against Patton. Through witnesses and the introduction of prior testimony of Patton and Burley, the jury learned the scope of Patton's K2 paper distribution scheme. Patton has failed to show any prejudice resulting from the admission into evidence of the few telephone calls with Perry that were captured during the wiretap investigation.

### C. No certificate of appealability shall issue

In order to pursue an appeal from a final order in a § 2255 proceeding, a petitioner must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A court should issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. 2253(c)(2). A petitioner meets this burden by showing that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

No certificate of appealability will issue here. The Court finds that jurists of reason would not find it debatable that Patton has not made a substantial showing of the denial of a constitutional right, and that he does not present any claims upon which habeas relief may be granted.

### II.  THE MOTION TO TRANSFER

Patton filed a letter on May 20, 2025, that the Court construes as a motion to transfer. He requests that the Court "dismiss the indictment and transfer the case to New Jersey which is the proper venue." (ECF No. 232, p. 1). In a subsequent letter to the Court, Patton stated, "I respectfully request that this case be transferred to the District of New Jersey the proper venue. Should the Court grant this transfer, my pending 28 U.S.C. § 2255 motion will become moot." (ECF No. 238). In another letter Patton wrote, "the Motion to Transfer to the proper venue in New Jersey should be granted." (ECF No. 240).

Patton's motion to transfer will be denied. Pursuant to 28 U.S.C. § 2255(a), Patton properly filed his § 2255 Motion with the Court, who presided over his case, including sentencing. *See* 28 U.S.C. § 2255(a) (stating that § 2255 motions must be filed in the federal district court that imposed the conviction and sentence the prisoner is challenging). For the reasons set forth above, the Court is denying his § 2255 Motion. It would have been improper to transfer the motion to be adjudicated by a judge in the District of New Jersey. At this stage of Patton's case – after conviction, sentencing, and direct appeal – the Court has no authority to transfer his case.[8] *See United States v. Cox*, 692 F. App'x 85, 86 (3d Cir. 2017) (Fed. R. CRIM. P. 21(a) permitting the transfer of a criminal trial to a different venue did not apply to a defendant whose trial had taken place and who was seeking, in connection with *pro se* post-sentencing motions, to transfer the case out of district judge's court).

## III. CONCLUSION

For the foregoing reasons of law and fact, Patton's motions will be denied by Order of Court to follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

9/22/25
Dated

[8] As the Court noted above, Patton's Ground One ineffectiveness claim (i.e., that venue was improper in the Western District of Pennsylvania) is meritless.